1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KORY T. O'BRIEN, | Case No. 1:21-cv-0856-JLT-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PARTIES' MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| RITA DIAZ, et al., | (ECF Nos. 40, 41) |
| Defendants. | |

Plaintiff Kory T. O'Brien is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment filed on September 16, 2022, and Plaintiff's motion for summary judgment filed on September 27, 2022. (ECF Nos. 40, 41.)

## I.

## RELEVANT BACKGROUND

This action is proceeding against R. Diaz and J. Moore for retaliation in violation of the First Amendment.

On November 9, 2021, Defendants filed an answer to the complaint.

On November 17, 2021, the Court issued the discovery and scheduling order.

As previously stated, on September 16, 2022, Defendants filed a motion for summary judgment.

1    On September 27, 2022, Plaintiff filed a motion for summary judgment.

2    On October 11, 2022, Defendants filed an opposition to Plaintiff's motion for summary
3    judgment.

4    On October 14, 2022, Plaintiff filed an opposition to Defendants' lodging and use of the
5    deposition transcript as evidence and a separate response to Defendants' statement of undisputed
6    facts.

7    On October 25, 2022, Plaintiff filed an opposition to Defendants' motion for summary
8    judgment.

9    On November 4, 2022, Defendants filed a reply to Plaintiff's opposition.

10    On November 7, 2022, Plaintiff filed a reply to Defendants' opposition to his motion for
11    summary judgment.

12    On November 28, 2022, Plaintiff filed a reply to Defendants' opposition to his to the use
13    of the deposition transcript.

14                                              **II.**

15                                    **LEGAL STANDARD**

16    **A.      Summary Judgment Standard**

17    Any party may move for summary judgment, and the Court shall grant summary
18    judgment if the movant shows that there is no genuine dispute as to any material fact and the
19    movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks
20    omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's
21    position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to
22    particular parts of materials in the record, including but not limited to depositions, documents,
23    declarations, or discovery; or (2) showing that the materials cited do not establish the presence or
24    absence of a genuine dispute or that the opposing party cannot produce admissible evidence to
25    support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider
26    other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R.
27    Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir.
28    2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, <u>Comite de Jornaleros de Redondo Beach v. City of Redondo Beach</u>, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." <u>Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two</u>, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." <u>Id.</u>

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A.    Summary of Plaintiff's Complaint**

On September 1, 2020, Plaintiff was told to exit the law library because his two hours were over.  Plaintiff approached the main counter in the law library, and Plaintiff told an inmate clerk that "[t]his is fucking crazy.  I just got out of quarantine.  I have six active cases, and I can[]not even get an extra fucking half hour."  Defendant Diaz, who Plaintiff was not talking to, interrupted the conversation and instructed Plaintiff to "watch his language."  Plaintiff complied with the verbal counseling.  Plaintiff informed Defendant Diaz "to watch her discrimination, I am good a[t] filing civil lawsuits[,]" because other inmates were allowed to stay in the law

1    library and it was verbal notification of Plaintiff's intent to file a lawsuit against Diaz for

2    discrimination.  Plaintiff walked away from the main counter and exited the law library.

3    On September 2, 2020, Plaintiff received a Rules Violation Report (RVR), Log No.

4    7026650, from Defendant Diaz for disrespect without potential for violence/disruption pursuant

5    to California Code of Regulations, title 15, section 3004(b).  Defendant sergeant J. Moore was

6    the reviewing supervisor who approved the RVR.

7    Section 3004(b) states, "Inmates, parolees, and employees will not openly display

8    disrespect or contempt for others in any manner intended to or reasonably likely to disrupt

9    orderly operations within the institutions or to incite or provoke violence."  If intent must be

10   present or reasonably likely, then the RVR must contain those elements.  The RVR specifically

11   states "w/out potential for violence/disruption."   Disrespect without the potential for

12   violence/disruption is not a violation of section 3004(b), and the RVR issued by Defendant Diaz

13   was false which was issued only after Plaintiff expressed his intent to file a lawsuit against Diaz.

14   Defendant J. Moore reviewed and approved the RVR and without Moore's participation

15   and involvement it could not have been filed.

16          **B.    Plaintiff's Statement of Undisputed Facts[1]**

17          1.    Plaintiff was charged by prison officials with a Rules Violation Report (RVR) for

18   the Specific Act: Disrespect w/out Potential for Violence/Disruption. (Declaration of Plaintiff

19   (Pl. Decl.) ¶ 18, ECF No. 41.)

20          2.    Plaintiff was in the law library on September 1, 2020 from 8:38-10:49. (Pl. Decl.

21   ¶ 3.)

22          3.    California Code of Regulations Title 15 § 3004(b) does not include the word

23   phrase "without potential."  (Pl. Ex. A, ECF No. 41 at 28.)

24          4.    At approximately 10:47 a.m. on September 1, 2020, Plaintiff was informed by

25   library staff that his two hours in the law library was over.  (Pl. Decl. ¶ 4.)

26          5.    Plaintiff used profanity while in the library.  (Pl. Decl. ¶ 4.)

27   _____

28   [1] Hereinafter referred to as "PUF."

4

6. Plaintiff did not admit and denies that he had a loud tone while in discussion with inmate Steiner. (Pl. Decl. ¶ 10.)

7. Defendant, R. Diaz, overheard Plaintiff use the "f" word. Therefore, R. Diaz informed Plaintiff to "watch his language." (RVR, Ex. A; Pl. Decl. ¶ 6, Ex. D at p.2; Ex. E at p. 2.)

8. Plaintiff stopped using profanity after Defendant Diaz told him to watch his language. (ECF No. 41 at 19:15-20.)

9. After Diaz told Plaintiff to watch his language, Plaintiff responded "Watch your discrimination. I am good at filing civil lawsuits. (ECF No. 1 at 5.)

10. Plaintiff did not approach R. Diaz in a violent and/or aggressive manner. (Pl. Decl. ¶ 10.)

11. R. Diaz authored RVR Log #7026650. The RVR was authored for violation of Title 15 § 3004(b), Specific Act: Disrespect without Potential for Violence/Disruption. (Ex. E, Diaz's Resp. to Interrog. ¶ 7.)

12. Diaz did not question Plaintiff about why he was making a threat of litigation for discrimination. (Pl. Decl. ¶ 13.)

13. Defendant Diaz heard Plaintiff's statement and tone. (Ex. E, Diaz's Resp. to Interrog. ¶¶ 6, 17.)

14. A RVR is required to be reviewed by a rank of Sergeant or higher. (Ex. F, Moore Admiss. ¶ 1.)

15. Defendant Moore is aware that Title 15 § 3004 does not contain the wording of "without the potential." (Ex F, Moore Admiss. ¶ 4.)

C. **Defendants' Statement of Undisputed Facts**[2]

1. On September 1, 2020, Plaintiff was incarcerated and housed at Valley State Prison (VSP), Facility C. (Pl. Dep. at 26:16-24, Ex. A; 9/01/2020 VSP PLU Sign-In Sheet, Ex. B.)

---

[2] Hereinafter referred to as "DUF."

1    2.    On September 1, 2020, Plaintiff was scheduled and authorized to be in the law

2  library from 0838 hours to 1038 hours.  (Pl. Dep. at 28:17-19, 30:23-31:16, 32:22-33:12, Ex. A;

3  9/01/2020 VSP PLU Sign-In Sheet, Ex. B.)

4    3.    On September 1, 2020, Defendant R. Diaz was working in the law library at VSP

5  as a Library Technical Assistant.  (Declaration of R. Diaz (Diaz Decl.) ¶ 1, Ex. C.)

6    4.    An unknown staff member informed Plaintiff that Plaintiff's two hours of library

7  time were finished.  (Pl. Dep. at 49:16-50:3, 55:1922.)

8    5.    After that, Plaintiff approached the library's main counter and asked an inmate

9  clerk what time Plaintiff had arrived at the library and how long Plaintiff had been at the library.

10  (Pl. Dep. at 50:4-17, 55:23-56:1.)

11    6.    The inmate clerk told Plaintiff that Plaintiff arrived at the library at 0838 hours.

12  (Pl. Dep. at 50:13-20.)

13    7.    Then Plaintiff looked at the clock, saw that the time was past 1038 hours, and

14  Plaintiff said to the inmate clerk, "This is fucking crazy.  I have six active cases.  I just got out of

15  quarantine, and I can't even get an extra fucking half-hour."  (Pl. Dep. at 50:21-51:4; Compl. at

16  5, ECF No. 1.)

17    8.    At the time Plaintiff made this statement, Defendant R. Diaz was seated at her

18  desk in the library.  (Pl. Dep. at 52:12-23; Diaz Decl. ¶ 3.)

19    9.    Defendant Diaz instructed Plaintiff to watch his language.  (Pl. Dep. at 51:5-10,

20  56:13-19, Diaz Decl. ¶ 3.)

21    10.    Plaintiff looked at Defendant Diaz to see who she was talking to, and noticed

22  Defendant Diaz was looking at him.  (Pl. Dep. at 71:6-22, 72:12-15.)

23    11.    Plaintiff believed Defendant Diaz was telling him to watch his language because

24  no other inmates were using profanity around them.  (Pl. Dep. at 56:13-19; 67:22-68:2.)

25    12.    Plaintiff then looked at Defendant Diaz and said, "Watch your discrimination.  I

26  am good at filing civil lawsuits."  (Pl. Dep. at 53:16-23, 56:20-23, Diaz Decl. ¶ 3.)

27    13.    Then Plaintiff left the library.  (Pl. Dep. at 53:24-54:1, 56:24-57:2; Diaz Decl. ¶

28  3.)

1    14.    Plaintiff did not tell Defendant Diaz that he was actually going to file a civil

2 lawsuit against her.[3]  (Pl. Dep. at 73:13-18.)

3    15.    Plaintiff stated that he told Defendant Diaz he was good at filing civil lawsuits as

4 a warning to her that if she continued to discriminate against him, he would file a civil lawsuit

5 against her.  (Pl. Dep. at 60:18-61:3; 91:19-24.)

6    16.    Plaintiff claims Defendant Diaz had a pattern of discriminating against him by

7 allowing other inmates usage of the law library beyond their time limit, but admits he has no

8 documentation or witnesses to support such a claim.  (Pl. Dep. at 80:21-82:7.)

9    17.    On September 1, 2020, Plaintiff did not ask to extend his time in the law library

10 beyond the allotted two hours.  (Pl. Dep. at 59:8-14.)

11    18.    Plaintiff is aware that the Senior Librarian has the ability to extend an inmate's

12 time in the law library.[4]  (Pl. Dep. at 46:2-21.)

13    19.    Plaintiff had no further communication with Defendant Diaz that day.  (Pl. Dep. at

14 57:3-5; Diaz Decl. ¶ 7.)

15    20.    Plaintiff understands that Title 15 provides that profanity is not to be used.  (Pl.

16 Dep. at 67:6-11.)

17    21.    On September 1, 2020, Defendant Diaz wrote Rules Violation Report (RVR) Log

18 Number 000000007026650 as a method of counseling Plaintiff for his disrespectful behavior in

19 violation of California Code of Regulations, title 15, section 3004(b).  This was a Counseling

20 Only RVR under California Code of Regulations, title 15, section 3312(a)(2).  (Diaz Decl. ¶ 5;

21 Declaration of J. Moore (Moore Decl.) ¶ 3, Ex. D; RVR, Ex. F.)

22    22.    Defendant Diaz routed RVR Log Number 00000000702665 to Defendant J.

23 Moore, a supervisor at the "C Facility" where Plaintiff was housed, for his review and approval.

24 (Diaz Decl. ¶ 6; Moore Decl. ¶ 3; RVR, Ex. F.)

25

26 [3] Although Plaintiff denies and disputes his fact, he has not cited or offered any evidence to support his contention and his deposition testimony supports this statement of fact.

27 [4] Plaintiff denies this fact by stating that he did not witness the Senior Librarian in the library on that day.  However, such contention does not dispute this fact as presented by Defendants.

28

1    23.    On September 1, 2020, Defendant Moore was a supervisor at "C Facility" where

2  Plaintiff was housed.  (Diaz Decl. ¶ 6; Moore Decl. ¶ 3.)

3    24.    On September 1, 2020, Defendant Moore had the authority to review and

4  approve/disapprove the issuance of RVR Log Number 000000007026650.  (Pl. Dep. at 94:7-12;

5  Diaz Decl. ¶ 6; Compl. at 6:4-5; Moore Decl.  ¶ 3.)

6    25.    On September 1, 2020, Defendant Moore reviewed and approved the issuance of

7  the Counseling Only RVR Log Number 000000007026650, because Plaintiff's conduct, as

8  described in the RVR, fell under California Code of Regulations, title 15, section 3004(b).[5]

9  (Moore Decl. ¶n 3; RVR, Ex. F.)

10    26.    On September 1, 2020, Plaintiff did not see Defendant Moore at the law library.

11  (Pl. Dep. at 94:16-23.)

12    27.    Plaintiff could not recall having any prior issues with Defendant Moore.  (Pl. Dep.

13  at 94:4-6.)

14    28.    Since filing his civil lawsuit, Plaintiff has not communicated with Defendant

15  Moore.  (Pl. Dep. at 95:12-17.)

16    29.    Plaintiff admits that he used profanity which caused Defendant Diaz to instruct

17  him to watch his language.  (Pl. Dep. at 52:8-11, 56:13-19, 67:22-68:2; Compl. at 5.)

18    **C.    Plaintiff's Opposition to Use of Deposition Transcript**

19    Plaintiff moves, pursuant to Federal Rule of Civil Procedure 32, to suppress his

20  deposition testimony because he was not afforded the opportunity to review and sign his

21  deposition under Rule 30(e).   Fed. R. Civ. P. 32(d)(4) ("An objection to how the officer

22  transcribed the testimony—or prepared, signed, certified, sealed, endorsed, sent, or otherwise

23  dealt with the deposition—is waived unless a motion to suppress is made promptly after the error

24  or irregularity becomes known or, with reasonable diligence, could have been known.")

25    Under Federal Rule of Civil Procedure 30(e)(1), a deponent may, on request, review the

26  transcript of his deposition and submit a signed statement listing "changes in form or substance

27  

28  [5] Plaintiff's disagreement with whether his conduct falls within the stated regulation does not place this statement of fact in dispute.

8

1    ... and the reasons for making them." Fed. R. Civ. P. 30(e)(1). "While the language of [Rule]

2    30(e) permits corrections 'in form or substance,' this permission does not properly include

3    changes offered solely to create a material factual dispute in a tactical attempt to evade an

4    unfavorable summary judgment." Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397

5    F.3d 1217, 1225 (9th Cir. 2005).

6          The Ninth Circuit has made clear that "Rule 30(e) is to be used for corrective, and not

7    contradictory, changes." Id. at 1226.  Indeed, under Rule 30(e) a deponent "may not 'alter what

8    was said under oath ... A deposition is not a take home examination.' " Fosselman v. Dimmer,

9    No. 1:12-cv-01302-DAD-SAB (PC), 2017 WL 1254685, at *16 (E.D. Cal. Feb. 17,

10   2017) (quoting Garcia v. Pueblo Country Club, 299 F3d 1233, 1242 n. 5 (10th Cir. 2022)).  "In

11   the Ninth Circuit, Rule 30(e) deposition errata are subject to the 'sham rule,' which precludes a

12   party from creating 'an issue of fact by an affidavit contradicting his prior deposition

13   testimony.'" Greer v. Pac. Gas & Elec. Co., No. 1:15-CV-01066-EPG, 2017 WL 2389567, at *4

14   (E.D. Cal. June 1, 2017) (quoting Karpenski v. Am. Gen. Life Companies, *LLC*, 999 F.Supp.2d

15   1218, 1224–25 (W.D. Wash. 2014). To determine "whether a deposition errata constitutes a

16   sham, courts consider circumstances including the number of corrections, whether the

17   corrections fundamentally change the prior testimony, the impact of the corrections on the cases

18   (including whether they pertain to dispositive issues), the timing of the submission of

19   corrections, and the witness's qualifications to testify." Greer, 2017 WL 2389567, at

20   *4 (quoting Karpenski, 999 F.Supp.2d at 1224–25). "Even where a court finds that errata are not

21   shams, the court may still strike portions that constitute contradictory rather than corrective

22   changes." Id. (citation omitted).

23         Here, on June 30, 2022, Plaintiff's deposition was taken via videoconference.  (ECF No.

24   45; Declaration of Mabel Lew (Lew Decl.) ¶ 2.)  It is undisputed that Plaintiff requested a copy

25   of the deposition transcript to review.  (ECF No. 45; Lew Decl. ¶ 3.)  After Plaintiff filed the

26   instant motion to suppress his deposition transcript, defense counsel discovered that the

27   deposition transcript had not been received at Plaintiff's institution.  (Lew Decl. ¶¶ 8-12;

28   Declaration of B. Ebert (Ebert Decl.) ¶ 5.)   Defense counsel then contacted B. Ebert, Litigation

Coordinator at California Medical Facility (CMF) regarding the whereabouts of Plaintiff's deposition transcript.  (Lew Decl. ¶ 10.)   On October 18, 2022, B. Kinzie, Veritext Client Services Representative, notified defense counsel that their shipping department confirmed that the deposition transcript was mailed to Plaintiff's institution on July 21, 2022.  (Lew Decl. ¶ 11.)

On October 19, 2022, defense counsel notified B. Kinzie that there were no legal mail entries associated with Plaintiff having received the deposition transcript.  (Lew Decl. ¶ 12.)  Counsel advised that since Plaintiff claimed he never received the deposition transcript, a condensed version of the deposition transcript with a proof of service, a signature page and an errata sheet was forwarded to Plaintiff on October 19, 2022.  (Lew Decl. ¶¶ 12-13.)

On October 20, 2022, B. Ebert informed defense counsel that she provided Plaintiff with the emailed materials for Plaintiff (i.e. the condensed version of the deposition transcript with proof of service, a signature page and an errata sheet for Plaintiff).  (Lew Decl. ¶ 14 & Attach. 3.)

On November 3, 2022, defense counsel received a letter from Plaintiff indicating that he would not be submitting any corrections to the transcript because the thirty-day period to review the transcript had expired.  On this same day, counsel responded by stipulating to extend the period of time to review the transcript.  (Lew Decl. ¶ 15.)

On November 11, 2022, Plaintiff filed a reply to Defendants' opposition to his motion to suppress the deposition transcript and continues to argue that Defendants should not have submitted the deposition to the Court without his review.  (ECF No. 50.)

Although Plaintiff did not initially receive a copy of the deposition transcript, it undisputed that Plaintiff received a copy of the deposition transcript for review and corrections on October 19, 2022.  Contrary to Plaintiff's contention, Defendants did not become aware that he did not receive a copy of the deposition transcript until October 14, 2022 when he filed the instant motion to suppress the transcript.   Plaintiff's motion must be denied as an order suppressing the deposition transcript and testimony is unnecessary.   To date, Plaintiff has not identified any alleged errors or inaccuracies in his deposition transcript.   Rather, Plaintiff's argument is limited to procedural irregularities.  While Plaintiff should have been provided with

the required notification and opportunity to review the transcript prior to the reporter sending defense counsel a copy of the transcript, and before the transcript was designated "certified," Plaintiff was subsequently accorded the opportunity to make corrections, but declined to so. Even now before this Court, in his to Defendants' opposition, Plaintiff fails to identify any alleged errors or inaccuracies in the transcript.  Further, nothing in the record suggests any error or irregularity as to how the deposition officer transcribed and prepared the testimony. Plaintiff's testimony, the questions propounded, and objections and statements made during the examination were recorded stenographically by the court reporter, and were thereafter transcribed.  In the absence of any showing of prejudice, the Court finds no basis for striking Plaintiff's deposition transcript. Therefore, Plaintiff's motion to strike his transcript is denied.

**D.    Parties' Motions**

Plaintiff alleges that Defendant Diaz retaliated against him in an attempt to chill his First Amendment right to Free Speech when she wrote a false counseling only RVR after Plaintiff told her he was going to file a civil lawsuit against her.  Plaintiff also alleges that Defendant Moore retaliated against him by conspiring with Defendant Diaz in reviewing and approving the RVR.

1.    Plaintiff's Motion for Summary Judgment

In his motion for summary judgment, Plaintiff argues that the RVR was written and approved only after Plaintiff threatened an intent of future litigation, and the RVR does not fall within section 3004(b) because there was no intent to incite/provoke violence.  As a consequence, the false RVR may adversely impact his prison programming and chance for release.

In opposition, Defendants argue that Plaintiff failed to provide admissible evidence that legitimate correctional purposes did not motivate the actions by prison officials about which he complains.  Plaintiff also fails to present evidence that the RVR is false because it was issued after Plaintiff warned Defendant Diaz to watch her discrimination and that he is good at filing civil lawsuits.  Lastly, Plaintiff fails to present admissible evidence that Defendants did not reasonably believe that Plaintiff's conduct violated Title 15, section 3004(b) or that Defendants

1    violated a clearly-established right in the specific context of this case.

2        2.    Defendants' Motion for Summary Judgment

3        Defendants argue they are not liable for retaliation against Plaintiff because the basis for

4    issuance of the RVR was for Plaintiff's loud use of profanity while in the law library in violation

5    of California Code of Regulations, title 15, section 3004(b), which served a legitimate

6    penological interest and no chilling of Plaintiff's rights under the First Amendment.    In the

7    alternative, Defendants are they are entitled to qualified immunity on Plaintiff's claim.

8        In opposition, Plaintiff argues genuine issues of disputed fact exists as to the motivation

9    and legitimate penological interest in issuing the RVR.

10        3.    Analysis of Parties' Motions

11        "Within the prison context, a viable claim of First Amendment retaliation entails five

12    basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

13    because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

14    exercise of his First Amendment rights, and (5) the action did not reasonably advance a

15    legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir.

16    2005) (footnote and citations omitted). To prevail on a retaliation claim, a plaintiff may "assert

17    an injury no more tangible than a chilling effect on First Amendment rights." Brodheim v. Cry,

18    584 F.3d 1262, 1269-70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his

19    speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would

20    chill or silence a person of ordinary firmness from future First Amendment activities.' " Id. at

21    1271 (citing Rhodes, 408 F.3d at 568–69) (emphasis in original). "Evidence of his motive may

22    include: (1) proximity in time between the protected conduct and the alleged retaliation; (2)

23    defendant's expressed opposition to the protected conduct; and (3) other evidence showing that

24    defendant's reasons for the challenged action were false or pretextual." Barth v. Montejo, No.

25    2:19-CV-1874 DB P, 2020 WL 73407, at *2 (E.D. Cal. Jan. 7, 2020).

26        While prisoners have no freestanding right to a prison grievance process, see Ramirez v.

27    Galaza, 334 F.3d 850, 860 (9th Cir.2003), "a prisoner's fundamental right of access to the courts

28    hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d 1276, 1279

(9th Cir. 1995), overruled on other grounds by <u>Shaw v. Murphy</u>, 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. <u>Rhodes</u>, 408 F.3d at 567.

Here, it is undisputed that on September 1, 2020, Plaintiff was scheduled and authorized to be in the law library from 0838 hours to 1038 hours. (DUF 2.) Plaintiff was actually in the law library on September 1, 2020 from 8:38 to 10:49. (PUF 2.) On this day, Defendant R. Diaz was working in the law library at VSP as a Library Technical Assistant. (DUF 3.) At approximately 10:47 a.m., an unknown staff member informed Plaintiff that Plaintiff's two hours of library time were finished. (DUF 4; PUF 4.)

After that, Plaintiff approached the library's main counter and asked an inmate clerk what time Plaintiff had arrived at the library and how long Plaintiff had been at the library. (DUF 5.) The inmate clerk told Plaintiff that Plaintiff arrived at the library at 0838 hours. (DUF 6.) Then Plaintiff looked at the clock, saw that the time was past 1038 hours, and Plaintiff said to the inmate clerk, "This is fucking crazy. I have six active cases. I just got out of quarantine, and I can't even get an extra fucking half-hour." (DUF 7.) Plaintiff did not admit and denies that he had a loud tone while in discussion with inmate Steiner. (PUF 6.)

At the time Plaintiff made this statement, Defendant R. Diaz was seated at her desk in the library. (DUF 8.) Defendant Diaz instructed Plaintiff to watch his language. (DUF 9.) Plaintiff looked at Defendant Diaz to see who she was talking to, and noticed Defendant Diaz was looking at him. (DUF 10.) Plaintiff stopped using profanity after Defendant Diaz told him to watch his language. (PUF 8.) Plaintiff believed Defendant Diaz was telling him to watch his language because no other inmates were using profanity around them. (DUF 11.) Plaintiff then looked at Defendant Diaz and said, "Watch your discrimination. I am good at filing civil lawsuits." (DUF 12.) Defendant Diaz heard Plaintiff's statement and tone. (PUF 13.) Plaintiff did not approach Defendant Diaz in a violent and/or aggressive manner. (PUF 10.) Then Plaintiff left the library. (DUF 13.)

1    Plaintiff did not tell Defendant Diaz that he was actually going to file a civil lawsuit

2 against her.  (DUF 14.)  Plaintiff stated that he told Defendant Diaz he was good at filing civil

3 lawsuits as a warning to her that if she continued to discriminate against him, he would file a

4 civil lawsuit against her.  (DUF 15.)  Diaz did not question Plaintiff about why he was making a

5 threat of litigation for discrimination.  (PUF 12.)

6    Plaintiff claims Defendant Diaz had a pattern of discriminating against him by allowing

7 other inmates usage of the law library beyond their time limit, but admits he has no

8 documentation or witnesses to support such a claim.  (DUF 16.)

9    On September 1, 2020, Plaintiff did not ask to extend his time in the law library beyond

10 the allotted two hours.  (DUF 17.)  Plaintiff is aware that the Senior Librarian has the ability to

11 extend an inmate's time in the law library.  (DUF 18.)  Plaintiff had no further communication

12 with Defendant Diaz that day.  (DUF 19.)  Plaintiff understands that Title 15 provides that

13 profanity is not to be used.  (DUF 20.)

14    On September 1, 2020, Defendant Diaz wrote Rules Violation Report (RVR) Log

15 Number 000000007026650 as a method of counseling Plaintiff for his disrespectful behavior in

16 violation of California Code of Regulations, title 15, section 3004(b).  This was a Counseling

17 Only RVR under California Code of Regulations, title 15, section 3312(a)(2).  (DUF 21.)

18 Section 3004(b) does not include the word phares "without potential."  (PUF 3.)  Defendant

19 Moore is aware that Title 15 section 3004 does not contain the wording of "without the

20 potential."  (PUF 15.)  A RVR is required to be reviewed by a rank of sergeant or higher.  (PUF

21 14.)  Defendant Diaz routed RVR Log Number 00000000702665 to Defendant J. Moore, a

22 supervisor at the "C Facility" where Plaintiff was housed, for his review and approval.  (DUF

23 22.)

24    On September 1, 2020, Defendant Moore was a supervisor at "C Facility" where Plaintiff

25 was housed and had the authority to review and approve/disapprove the issuance of RVR Log

26 Number 000000007026650.  (DUF 23-24.)  Defendant Moore reviewed and approved the

27 issuance of the Counseling Only RVR Log Number 000000007026650, because Plaintiff's

28 conduct, as described in the RVR, fell under California Code of Regulations, title 15, section

3004(b).  (DUF 25.)

On September 1, 2020, Plaintiff did not see Defendant Moore at the law library.  (DUF 26.)  Plaintiff could not recall having any prior issues with Defendant Moore.  (DUF 27.)   Since filing his civil lawsuit, Plaintiff has not communicated with Defendant Moore.   (DUF 28.)  Plaintiff admits that he used profanity which caused Defendant Diaz to instruct him to watch his language.  (DUF 29.)

### a.        Falsity and Invalidity of Counseling Only RVR

Viewing the undisputed evidence in the light most favorable to Plaintiff, he has failed  to demonstrate a genuine issue of material fact as to whether the Counseling Only RVR was issued in retaliation for exercising his First Amendment rights.  Because of Plaintiff's use of profanity after being informed by a staff member that his allowed two-hours in the library were up, Defendant Diaz told Plaintiff to watch his language.  (DUF 9.)  Moments later, as he was exiting the law library, Plaintiff told Defendant Diaz to watch her discrimination, and that he was "good at filing civil lawsuits."  (DUF 12-13.)  Plaintiff was issued a RVR for violation of section 3004(b), which was approved by Defendant Moore because the circumstances described by Diaz demonstrated that Plaintiff violated section 3004(b).

Plaintiff contends that the RVR was false because Defendant Diaz's instruction to him to watch his language was a "verbal counseling", that he complied with that verbal counseling, and he denied being disrespectful to her.  However, as demonstrated above, the RVR was not false because it is undisputed that Plaintiff admits he used profanity which caused Defendant Diaz to instruct him to watch his language for which Plaintiff expressed awareness that under Title 15 profanity is not to be used.  (DUF 20.)  The California Code of Regulations, Title 15, section 3314(a)(3)(H), provides that the use of vulgar or obscene language is an administrative rule violation.  Such misconduct can be documented on a Counseling Only RVR which is meant to be used for documenting an event or misconduct on the part of the inmate and requires that a copy of the RVR be provided to the inmate pursuant to section 3312(a)(2).  In this case, Defendant Diaz overheard Plaintiff using vulgar language, documented the misconduct in a Counseling Only RVR, and provided a copy to Plaintiff.  (Citation to DUF.)  As such, the RVR was not

false, and the issuing of the Counseling Only RVR was appropriate and justified.  Although Plaintiff contends that the "f" word was not directed at anyone, such contention is irrelevant as Plaintiff acknowledges that the use of profanity violates Title 15.

Furthermore, Plaintiff's argument that issuing the RVR did not comply with CDCR policies is unfounded.  Alleged non-compliance with state statutes or prison regulations does not support a claim under section 1983, which applies only to federal constitutional violations.  See Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (violation of the CDCR operations manual does not support a federal constitutional violation).  Thus, Plaintiff's contentions that the RVR should not have been issued either because his conduct did not violate Title 15, section 3004(b) or that verbal counseling was sufficient under the CDCR Department Operations Manual do not support a claim of First Amendment retaliation.

b.      **Legitimate Penological Goal**

Even if Plaintiff's evidence demonstrates that the defendant may have been motivated in part by frustration with Plaintiff's exercise of First Amendment rights, Plaintiff has failed to meet his burden of demonstrating a triable issue of fact whether defendant's issuance of the subject RVR advanced a legitimate correctional goal. Defendants' evidence demonstrating that their challenged conduct was motivated by, and narrowly tailored to achieve, legitimate correctional goals, in the absence of evidence that Defendants acted arbitrarily or capriciously, defeats Plaintiff's retaliation claim on summary judgment. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994);  Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012).

Plaintiff's profanity jeopardized the orderly operation of the institution.  Prisoners cannot remain in the law library as long as they please or beyond their allotted time limit upon invoking the First Amendment.  The issuance of a counseling only RVR was intended to advise/counsel Plaintiff that the use of profanity disturbs the orderly operation of the institution.   Thus, a clear legitimate penological interest was served in issuing the RVR.[6]

---

[6] To this end, the Court declines to find that that safety and security concerns are only implicated by physically disruptive behavior. Other courts have found that verbal challenges or ranting at correctional staff are not within an inmate's First Amendment rights. Johnson v. Carroll, No. 2:08–cv–01494 KJN P, 2012 WL 2069561, at *34 (E.D. Cal. June 7, 2012); see also Hale v. Scott, 371 F.3d 917, 919 (7th Cir.2004) ("Prison regulations that forbid inmates

16

### c.      Motivating Force Behind Issuance of Counseling Only RVR

The sole reason advanced by Plaintiff to show that retaliation was the substantial or motivating factor behind the filing of the disciplinary charges against him is that the disciplinary charges were allegedly filed he told Defendant Diaz that he was good at filing civil lawsuits. Timing can, of course, be considered as circumstantial evidence of retaliatory intent.[7]  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995).   However, in this case, Plaintiff stated he told Defendant Diaz he was good at filing civil lawsuits as a warning to her that if she continued to discriminate against him, he would file a civil lawsuit against her.  (DUF 15.)  Given Plaintiff's disrespectful conduct before Defendant Diaz told him to watch his language, Defendant Diaz would have issued the RVR even if Plaintiff had not then stated, "You watch your discrimination.  I am good at filing civil lawsuits."  (Diaz Decl. ¶ 5.)  Thus, the RVR would have been issued even if Plaintiff had not mentioned that he might file a lawsuit.  Accordingly, Defendants have shown that Plaintiff's behavior was the cause for the filing of the disciplinary charges against Plaintiff, and Plaintiff has not satisfied his burden of showing that retaliation was the substantial and motivating factor behind Defendants' conduct.

Despite Plaintiff's contention that prior to September 1, 2020, Defendant Diaz had a history of discriminating against him by allowing other inmates to stay in the law library longer than he was allowed, Plaintiff admits that he does not have any notes, documents, or names of witnesses to support his claim.  (DUF 16.)  Indeed, Plaintiff further admits that he never told Defendant Diaz he was actually going to file a civil lawsuit against her which negates a finding that he expressed an intent to engage in protected activity.  (DUF 14.)

///

---

to behave insolently toward guards are constitutional."). A prisoner's verbal insubordination "is proscribed by the legitimate goal of maintaining order and discipline within correctional institutions." Johnson, No. 2:08–cv–01494 KJN P, 2012 WL 2069561, at *34.

[7]  However, the fact that an adverse action chronologically followed some protected activity is not alone enough to state a retaliation claim. See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir.2000) (stating that a retaliation claim cannot be based simply on the logical fallacy of "after this, therefore, because of this.").

1       **d.**      **Adverse Action/Chilling Effect**

2       Lastly, Plaintiff has failed to show that he suffered any adverse action as a result of the

3 Counseling Only RVR.

4       Adverse action is action that "would chill a person of ordinary firmness" from engaging

5 in that activity. Pinard v. Clatskanie Sch. Dist., 467 F.3d 755, 770 (9th Cir. 2006). Though an

6 adverse action need not be an independent constitutional violation, inconsequential or

7 de minimis harms do not constitute adverse actions.  Watison, 668 F.3d at 1114 (noting that to

8 support a claim, a harm must be "more than minimal").  Plaintiff must establish that that a person

9 of ordinary firmness would have been chilled from exercising their First Amendment rights, and

10 the threatened harm must be more than minimal. Rhodes v. Robinson, 408 F.3d at 568 n. 11.

11 Minor changes to an inmate's program have been held to constitute minimal harm which is not

12 actionable. See Johnson v. Feist, No. 2:19-cv-01285 ODW-JDE, 2020 WL 6121981, at *7 (C.D.

13 Cal., Sept. 8, 2020) (being ordered to leave the prison kitchen and return to inmate's cell on one

14 occasion cell constitutes a minimal harm which fails to state a First Amendment claim); Miller v.

15 Sanchez, No. CV 20-06-GW, 2020 WL 528010 *6 (C.D. Cal. Feb, 3, 2020) (assignment to a job

16 which conflicted with law library access for a single day is de minimus and does not rise to the

17 level of an adverse action that would deter a prison of ordinary firmness from further First

18 Amendment activities); Soriano v. Naranjo, No. 1:09-cv-985, 2011 WL 1827637 *4 (E.D. Cal.,

19 Sept. 19, 2011) (taking away a single meal on occasion would not cause a person to refrain from

20 exercising their constitutional rights).

21       A "counseling only" chrono is issued when "minor misconduct recurs after verbal

22 counseling or if documentation of minor misconduct is needed." Cal. Code Regs. tit. 15, §

23 3312(a)(2). The regulations do not require that any action be taken as a result of a counseling or

24 informational chrono. See Cal. Code Regs. tit. 15, §§ 3000, 3312. Whether issuing a counseling

25 chrono is an "adverse action" is not a settled proposition. Compare Alem v. Burton, 2021 WL

26 2805775, at *4 (E.D. Cal. July 2, 2021) ("counseling chronos are not adverse actions";

27 citing Vallery v. Botkin, 2020 WL 7425343, at *4-5 (E.D. Cal. Dec. 18, 2020) (collecting other

28 district court cases concluding that counseling chronos do not constitute adverse actions), report

and recommendation adopted, 2021 WL 843614 (E.D. Cal. Mar. 5, 2021)) with Brown v. Chothia, 2021 WL 2913076, at *13 (E.D. Cal. July 12, 2021) (reasonable jury could find that counseling chrono "intimated some form of punishment or negative effect would follow if plaintiff did not correct the underlying 'misconduct' " for an adverse action; quoting Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect.") (emphasis original)), report and recommendation adopted, 2021 WL 4132341 (E.D. Cal., Sep. 10, 2021).   Nonetheless, in this case, Plaintiff has not alleged how placing the Counseling Chrono RVR adversely affected him.   Plaintiff's incarceration has not been extended and he has failed to show any direct causal relationship between the issuance of the RVR and any possible loss of privileges.  (Pl. Dep. at 96:1-99:7.)   Plaintiff's housing has not been affected nor has he been subjected to any criminal prosecution as a result of the RVR.  (Id.)  This incident, at most, involved a minimal amount of harm which is insufficient to chill a person of ordinary firmness from exercising their First Amendment rights.   Rhodes v. Robinson, 408 F.3d at 568 n. 11; Arrant v. Zambrano, No. 3:20-cv-01220 JLS-AGS, 2020 WL 5408211, at *4 (S.D. Cal. Sept. 9, 2020 (finding dismissal of alleged false RVR as counseling only was non-minimal harm).   On this record, Plaintiff has not stated a plausible retaliation claim against Defendants based on the filing of the Counseling Chrono RVR.[8]   Based on the foregoing, Defendants have demonstrated that no genuine issue of material fact exists as to Plaintiff's retaliation claim.   Consequently, Plaintiff's motion for summary judgment should be denied and Defendants' motion for summary judgment should be granted.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDATION that:

1.    Plaintiff's motion to suppress his deposition (ECF No. 45) be denied;

2.    Plaintiff's motion for summary judgment (ECF No. 41) be denied; and

---

[8] Because the Court finds that Plaintiff's retaliation claim fails on the merits, the Court need not and will not reach Defendants' additional argument for qualified immunity.

1          3.      Defendants' motion for summary judgment (ECF No. 40) be granted.

2          These Findings and Recommendations will be submitted to the United States District

3   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **twenty-**

4   **one (21) days** after being served with these Findings and Recommendations, the parties may file

5   written objections with the Court.  The document should be captioned "Objections to Magistrate

6   Judge's Findings and Recommendations."  The parties are advised that failure to file objections

7   within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler,

8   772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir.

9   1991)).

10

11  IT IS SO ORDERED.

12  Dated:   __**January 17, 2023**__

         _____

         UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28